## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM LUCAS, individually and on behalf of all other persons similarly situated, known and unknown, | ) ) ) ) |
| Plaintiff, | ) Case No. 1:21-cv-05770 ) |
| v. | ) Magistrate Beth Jantz ) |
| CITGO PETROLEUM CORPORATION | ) ) |
| Defendant. | ) ) ) |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS FEES AND COSTS AWARD, ADMINISTRATION FEES, AND INCENTIVE AWARD

Michael L. Fradin
LAW OFFICE OF MICHAEL L. FRADIN
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
mike@fradinlaw.com

*Attorney for Plaintiff, individually and on behalf of a class of similarly situated individuals*

**I.      Introduction**

This Settlement covers the Illinois Wage Payment Collection Act ("IWPCA") claims of all current and former CITGO employees who worked at CITGO's Lemont, Illinois refinery at any time since October 28, 2011 through the date of preliminary approval, who, during this time period, had a safety equipment deduction. The Settlement comes after more than a year of litigation, the exchange of documents and information, and arm's length settlement discussions, and is the best result that could reasonably be achieved for the settlement class on their IWPCA claims in light of the difficulties individual class members would have in establishing their claims. In particular, the Settlement represents over three times the value of the actual safety equipment deductions that were made during the relevant period and is approximately 64% of the maximum value of the estimated class-wide damages and interest penalties. The Settlement is thus a fair, reasonable, and adequate outcome for all parties involved and is in the best interest of the settlement class in light of all known facts and circumstances, including the risk of significant delay, the risk that the proposed classes would not be certified by the Court, and the defenses asserted by CITGO.

**II.      Background**

Plaintiff has laid out the background of this case in the earlier settlement papers but also sets it out below.

Plaintiff William Lucas filed a Class and Collective Action Complaint on October 28, 2021, alleging wage and hour claims under the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL") and the IWPCA. Plaintiff was employed by CITGO from approximately 2008 through May 31, 2021. Plaintiff alleged that during his employment, CITGO violated federal and state wage-hour law by failing to pay all overtime due on shift

differentials and certain non-discretionary bonuses and violated Illinois law by making unlawful deductions from wages, including certain deductions for safety equipment.

In February and March 2022, the Parties exchanged written discovery, before agreeing to informally stay discovery while discussing potential early resolution of Plaintiff's claims. To facilitate settlement discussions, CITGO produced payroll records for Plaintiff for the period from December 2019 through his termination in May 2021, safety equipment data for all Illinois employees, and all applicable bonus plan documents. Throughout March and April 2022, the Parties conferred on several occasions. CITGO contended that the payroll records demonstrated that it paid all employees at its Lemont, Illinois refinery, including Plaintiff, all overtime owed on bonuses, and did so in a manner that was more advantageous to employees than what is required under federal or state law. CITGO also contended that the payroll records showed that it included shift differentials in the calculation of overtime pay as required under federal and state law. Finally, CITGO asserted that each of Plaintiff's payroll deductions during the relevant period were lawful, including (but not limited to) the four safety equipment deductions Plaintiff experienced over a nearly ten-year period, which totaled less than $30.

Following these initial discussions, the Parties agreed to focus settlement negotiations on Plaintiff's safety equipment deduction claims under the IWPCA. Throughout these negotiations, CITGO asserted that all safety equipment deductions were lawful under Illinois law and made for the benefit and convenience of Plaintiff and other CITGO employees. Specifically, CITGO asserted that these deductions represented the difference in cost between standard equipment (e.g., shoes, glasses) that CITGO provided to Plaintiff and other employees at no charge, and the equipment Plaintiff and other employees voluntarily purchased. CITGO

argued that it deducted the difference in cost between the standard equipment and the voluntarily purchased equipment from Plaintiff and other employees' wages as an administrative convenience, rather than requiring them to pay with cash or credit, which CITGO gave them the option of doing in lieu of a deduction. As such, CITGO maintained at all times that all deductions were for the benefit of the employee and thus lawful under the IWPCA.

As demonstrated by the documents and data produced by CITGO, the total amount of safety equipment deductions for the entire putative class during the relevant eleven-year time period amounted to less than $30,000. Plaintiff estimates that, with accrued interest, the maximum value of class-wide damages for the safety equipment deduction claim is $141,699.95.

### III. The Settlement

#### A. Class Definition

The Proposed Final Approval Order defines the Settlement Class as follows:

> All current and former employees of CITGO who work or worked at CITGO's Lemont, Illinois refinery at any time from October 28, 2011 through the date of the order granting preliminary approval and who, during this time period, had a safety equipment deduction.

#### B. Settlement Fund and Payments

Within thirty (30) days following entry of the Final Approval Order, the Defendant will transfer to the Settlement Administrator the Maximum Settlement Amount and an additional amount equal to Defendant's share of Payroll Taxes on the Wage Portion of the Individual Settlement Awards to Participating Class Members. The Settlement Administrator will mail individual settlement checks to Participating Class Members at their last known address pursuant to Section 7 of the Settlement Agreement and the Court's Scheduling Order (ECF No. 42).

#### C. Payment of Attorneys' Fees, Administration Fees, and Incentive Award

1. **The Requested Attorneys' Fees and Expenses are Reasonable and Should be Approved**

Class Counsel took this case on a contingent basis. Now that Class Counsel has achieved the results they did for the class, they respectfully request compensation of 33 1/3% of gross payments to Class Members, which is comfortably in line with fee awards in similar class action cases. Pursuant to the Settlement Agreement and this Court's preliminary approval order, Class Counsel seeks 33 1/3% of the Settlement Fund ($30,000.00) and costs of $470.81. Class Counsel submits his declaration in support of the request for fees and costs. Exhibit 3 (Fradin Decl.).

    a. **Percentage-of-the-Recovery Should be Used to Determine Fees Here**

Illinois has adopted the "common fund doctrine" for the payment of attorneys' fees in class action cases. *Wendling v. S. Ill. Hosp. Servs.*, 242 Ill. 2d 261, 265 (2011). "The doctrine provides that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id*. (internal quotations omitted). The basis of the doctrine is the equitable principle that "successful litigants would be unjustly enriched if their attorneys were not compensated from the common fund created for the litigants' benefit." *Brundidge v. Glendale Fed. Bank F.S.B.*, 168 Ill. 2d 235, 238 (1995). Consequently, "[b]y awarding fees payable from the common fund created for the benefit of the entire class, the court spreads the costs of litigation proportionately among those who will benefit from the fund." *Id*. (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

In determining the amount of a reasonable fee award in a common fund case, this Court has discretion to apply one of two methods: percentage-of-the-recovery or lodestar. *Brundidge*, 168 Ill. 2d at 243–44. Under the percentage-of-the-recovery approach, as the

name suggests, a reasonable attorneys' fee is awarded "based upon a percentage of the amount recovered on behalf of the plaintiff class." *Id*. at 238. Under the lodestar approach, on the other hand, a fee award is determined by taking the reasonable value of the services rendered (based on the hours devoted to the matter by class counsel) and increasing that amount by "a weighted multiplier representing the significance of other pertinent considerations," such as the contingent nature of the litigation, its complexity, and the benefit conferred upon class members. *Id*. at 239–40. Applying the percentage-of-the-recovery approach thus makes the most sense for this case. *See Sekura*, No. 2015-CH-16694; *Zepeda v. Kimpton Hotel & Rest.*, 2018-CH-02140 (Cir. Ct. Cook Cty. Dec. 5, 2018); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, 2017-CH-15152 (Cir. Ct. Cook Cty. Feb. 14, 2018); *Svagdis*, No. 2017-CH-12566.

### b. 33 1/3% is a Reasonable Fee Award

The 33 1/3% fee request falls comfortably within the range of typical fee awards in Illinois. Under Illinois law, "an attorney is entitled to an award from the fund for the reasonable value of his or her services." *Ryan*, 274 Ill. App. 3d at 922. Courts have commonly awarded higher percentages of the fund than the 33% requested here. *Sekura v. L.A. Tan Enters.*, 2015-CH-16694 (awarding 40% of fund); *Zepeda*, 2018-CH-02140 (awarding 40% of fund); *Svagdis*, No. 2017-CH-12566 (Cir. Ct. Cook Cty. Jan. 14, 2019) (awarding 40% of fund); *Willis, et al. v. iHeartMedia, Inc.*, No. 2016 CH 02455 (Cir. Ct. Cook Cty., Ill. June 24 and Aug. 11, 2016) (Atkins, J.) (awarding 40% of common fund); *see also Sterk v. Path, Inc.*, No. 2015 CH 08609 (Cir. Ct.Cook Cty. Ill. September 21, 2015) (awarding 36% of class benefits). *See also* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 15.83 (William B. Rubenstein ed., 5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any

common fund"). Accordingly, the requested award is more than appropriate. *See Taylor*, No. 2017-CH- 15152 (awarding 35% of gross payments to class members in fees).

In addition to falling within the range of typical fee awards, the 33 1/3% requested here is further justified—as explained below—in light of both (1) the risk Class Counsel undertook in pursuing this difficult litigation on a contingency basis, and (2) the excellent relief it ultimately obtained for the Settlement Class. *See Ryan*, 274 Ill. App. 3d at 924 (affirming district court's attorney fee award due to the "extreme contingency risk" of pursuing the litigation, and the "hard cash benefit" obtained).

### 2. Incentive Award

Plaintiff's $7,500.00 incentive award is similarly reasonable. Incentive awards in class action settlements frequently exceed $10,000.00. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) (finding that "[t]he average award per class representative was $15,992"); *e.g.*, *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 917 (1st Dist. 1995) (noting approval of $10,000 incentive award to two plaintiffs). Plaintiff seeks a $7,500 award to reflect his participation in investigation of the action and settlement negotiations and general release.

Plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004,1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the

plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employeror co-workers.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3 at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No.07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

In this case, the named Plaintiff worked diligently to protect and advocate on behalf of the Class. Plaintiff also contributed significantly to the settlement of the case as his active role in the exchange of information detailed herein enabled to parties to determine the proper scope of settlement negotiations and his first-hand knowledge proved valuable in allowing the parties to understand the risks of litigation. (Fradin Decl. ¶13). As a result, CITGO is willing to pay an amount which is nearly three-times the amount of the actual deductions that were made from the Class Members' pay for safety equipment.

The service award amount is reasonable. *See Jordan v. GoHealth, LLC,* Case No. 1:21-cv-4736 (N.D. Ill. Jun. 21, 2022) (Jantz, J.); *see also Zolkos*, 2015 WL 4275540, at *3 (awarding $10,000 to each of the Named Plaintiffs); *Chesemore*, 2014 WL 4415919, at *5 (stating"[a]s for appropriate amount, district courts in the Seventh Circuit have awarded incentive fee awards ranging from $5,000 to $25,000"); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013WL 4510997, at *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in litigation); *Mullins*, 2019 WL 275711, at *6

(approving $10,000 service award); *Arledge*, 2018 WL 5023950, at *6 (approving $10,000 service award); *Briggs*, 2016 WL 7018566, at *3(approving $12,500 in service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo*, 2016 WL 7451623, at *3-4 (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards); *Furman v. At Home Stores LLC*, No. 1:16-cv-081900, 2017 WL 1730995, at *3 (awarding $10,000 service award).

  **D.** **Settlement Administration**

Here, the Court approved the proposed Class Notice, which called for direct notice to all members of the Settlement Class via U.S. Mail. (Preliminary Approval Order ¶¶ 7-8). Pursuant to the Class Notice, Defendant provided the professional settlement administrator, Rust Consulting, with a list of 541 names and addresses of members of the Settlement Class. (Decl. of Abigail Schwartz, "Schwartz Decl." attached hereto as Exhibit 2, at ¶ 8.) Schwartz sent the Court-approved notice to the Settlement Class via mail. (Schwartz Decl. ¶10) Accordingly, notice was mailed to each of the 541 class members. (Schwartz Decl. ¶10). Overall, the Class Notice was highly successful and well exceeds that required for due process. *See Carrao*, 118 Ill. App. 3d at 429–30. Administration fees will be paid outside of the settlement fund. (Schwartz Decl. ¶15).

  **E.** **Release of Liability**

All Class Members who did not opt out ("Participating Class Members") will be bound by the terms of the Settlement Agreement and its limited release of the IWPCA claims in this case. By this Settlement Agreement, Plaintiff is releasing all claims against CITGO and the Released Parties, as defined in the Settlement Agreement, including his individual FLSA, IMWL

and IWPCA claims. Participating Class Members are releasing only their IWPCA deduction claims, as set forth in the Settlement Agreement. (Exhibit 1, (Agreement) § 6.1).

## IV. The Settlement Warrants Final Approval

The procedural and substantive standards governing final approval of a class action settlement are well settled in Illinois. *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992). The proposed settlement "must be fair and reasonable and in the best interest of all those who will be affected by it." *Id*. Because a proposed settlement is the result of compromise, "the court in approving it should not judge the legal and factual questions by the same criteria applied in a trial on the merits, … [n]or should the court turn the settlement approval hearing into a trial." *Id*.

"Although review of class action settlements necessarily proceeds on a case-by-case basis, certain factors have been consistently identified as relevant to the determination of whether a settlement is fair, reasonable and adequate." *Id*. These factors—referred to as the *Korshak* factors—are:

> (1) The strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Id.* (citing *City of Chi. v. Korshak*, 206 Ill. App. 3d 968, 971–72 (1st Dist. 1990)). Here, examination of the *Korshak* factors demonstrates that the Settlement is exceedingly fair, reasonable, and adequate, and deserving of final approval.

### A. The Relief Offered in the Settlement Weighs Strongly in Favor of Final Approval

The settlement amount of $90,000.00 is fair and reasonable. The Maximum Settlement Amount is more than three times the amount of the actual deductions that were made for safety equipment and represents approximately 64% of the maximum amount that Plaintiff calculated could be awarded upon a successful trial on the merits. This is a very good result. *Mars Steel Corp. v Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average). In this case, it is uncertain if Plaintiff would succeed on his claims. Indeed, CITGO would have argued that the safety equipment deductions created a convenience to Plaintiff and other employees, namely by allowing them to pay for the difference in cost between standard equipment provided by CITGO and voluntarily purchased equipment with a payroll deduction rather than with cash or credit, and thus are considered to the "benefit of the employee" and lawful under the IWPCA. *See* 820 ILCS 115/9; *see also Torres v. Nation One Landscaping, Inc.*, No. 2016 WL 7049048, at *5 (N.D. Ill. Dec. 5, 2016) (IWPCA "prohibits employers from making deductions from its employees' wages unless the deductions benefit the employee or the employee gave express written consent at the time of the deduction."); *Bell v. Bimbo Food Bakeries Distribution, Inc.*, No. 11 C 03343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2012) (equipment expense deductions benefited the plaintiff because they were convenient and saved the employee from out-of-pocket expenses and thus were lawful

under the Act). If CITGO were to prevail on that argument, Plaintiff's recovery, and the recovery for any prospective Class Member, would be zero.

The proposed Settlement is the product of substantial effort by both Parties. As a threshold matter, the factual investigation conducted both before this action was filed and which continued thereafter was robust. A substantial amount of information and documents was exchanged. By way of example, CITGO outlined in detail, both in writing and during meet and confer discussions, the factual and legal deficiencies in Plaintiff's FLSA and state law claims and demonstrated these points by providing Plaintiff with a production of payroll records, safety equipment deduction data for all Illinois employees, and the applicable bonus plan documents. This document and data exchange led Plaintiff's counsel to focus settlement discussions on Plaintiff's IWPCA claim and allowed Plaintiff's counsel to calculate class-wide damages and accurately value Plaintiff's and the Class's IWPCA claim. (Fradin Decl. ¶6).

The Parties thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery to support the Settlement. (*Id.*) Thus, the Settlement before this Court came only after the case was thoroughly investigated by counsel. (*Id.*) This litigation, therefore, has reached the stage where the Parties certainly had a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.

The overall assessment of claim viability, even assuming certification, presented several significant difficulties which included (1) the risk of losing at a summary judgment or trial, and (2) the lack of willingness to participate by some current employees whose role beyond an absent class member (such as a testifying witness or declarant) would cause them to hesitate to assist in the case for fear, whether real or imagined, of retaliation.[1] (*Id.*, ¶9) While Plaintiff's counsel is firmly

---

[1] That said, Plaintiff's counsel has no reason to believe CITGO would retaliate against Plaintiff or any Class Member.

convinced of the viability of Plaintiff's claims, this is not a given and Plaintiff and members of the Class, even if certified, could lose at trial. (*Id.*) A fair settlement such as this, which provides a certain payout that accounts for a high percentage of the maximum recovery, allows the Parties to avoid costly further litigation, and allows Class Members, including current employees, to receive immediate and certain compensation without attenuated circumstances inherent in the employer-employee relationship. (*Id.* ¶ 15)

### B. Plaintiff faced meaningful obstacles to relief

CITGO asserted that these deductions represented the difference in cost between standard equipment (e.g., shoes, glasses) that CITGO provided to Plaintiff and other employees at no charge, and the equipment Plaintiff and other employees voluntarily purchased. CITGO argued that it deducted the difference in cost between the standard equipment and the voluntarily purchased equipment from Plaintiff and other employees' wages as an administrative convenience, rather than requiring them to pay with cash or credit, which CITGO gave them the option of doing in lieu of a deduction. As such, CITGO maintained at all times that all deductions were for the benefit of the employee and thus lawful under the IWPCA.

Indeed, if the litigation had continued, CITGO would have argued that the safety equipment deductions created a convenience to Plaintiff and other employees, namely by allowing them to pay for the difference in cost between standard equipment provided by CITGO and voluntarily purchased equipment with a payroll deduction rather than with cash or credit, and thus are considered to the "benefit of the employee" and lawful under the IWPCA. *See* 820 ILCS 115/9; *see also Torres v. Nation One Landscaping, Inc.*, No. 2016 WL 7049048, at *5 (N.D. Ill. Dec. 5, 2016) (IWPCA "prohibits employers from making deductions from its employees' wages unless the deductions benefit the employee or the employee gave express written consent at the time of the deduction."); *Bell v. Bimbo Food Bakeries Distribution, Inc.*, No. 11 C 03343, 2013 WL 6253450

(N.D. Ill. Dec. 3, 2012) (equipment expense deductions benefited the plaintiff because they were convenient and saved the employee from out-of-pocket expenses and thus were lawful under the Act). If CITGO were to prevail on that argument, Plaintiff's recovery, and the recovery for any prospective Class Member, would be zero.

While Plaintiff believes that he would have been able to overcome the defenses, he recognizes that the law is uncertain and limited in IWPCA deduction cases and has factored in the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate court. This Settlement—providing as it does excellent monetary relief, directly to the Class and without delay—is highly beneficial for the Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's approval.

      **C.    The Complexity, Length, and Expense of Further Litigation Weighs in Favor of Settlement.**

The complexity, length, and expense of further litigation also supports final approval of the Settlement here. "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The Settlement here allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

Should the Parties have continued litigation, Defendant would likely have raised defenses on the merits and opposed class certification. The losing party at any of those stages would likely have appealed those determinations. And assuming that a class was ultimately certified (and that Plaintiff defeated a summary judgment motion), the case would have proceeded to a

trial, where Plaintiff would have to demonstrate that Defendant violated the IWPCA. No doubt a loss at trial for either side would have been appealed.

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Here, continued litigation would have caused great delay and expense, without any guarantee of a recovery for the Class. Settlement allows the Parties to avoid these problems, and this *Korshak* factor thus strongly weighs in favor of approval. *See Shaun Foley, Sabon, Inc. v. Metro. Life Ins. Co.*, 2016 IL App (2d) 150236, ¶ 19.

### D. The Positive Reaction to the Settlement Warrants Final Approval

Finally, the amount of opposition to the settlement and Class Members' reaction to the Settlement—are closely related and often examined together. *See, e.g.*, *Korshak*, 206 Ill. App. 3d at 973. Here, the Settlement Class's reaction to the Settlement has been positive and weighs strongly in favor final approval.

As detailed above, the Court-approved Settlement Administrator diligently mailed the Class Notice, and the objection and opt-out deadlines have passed. Rust received only seven (7) Opt-Out Statements and zero (0) objections. (Schwartz Decl. ¶¶ 13-14.) That not one person has objected to the Settlement is powerful evidence of the Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4–5 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon' and 'indicates the appropriateness of the request'") (citations omitted); *GMAC Mortg.*, 236 Ill. App. 3d at 497 ("The fact that only 26 of 590,000 members elected to opt-out is testimony . . . that the class believes the settlement is fair."); *Shaun Foley*, 2016 IL App (2d) 150236, ¶ 20 (affirming trial court's finding that where opposition to class

settlement was "de minimus," this fact weighed in favor of settlement approval). These two factors thus strongly support granting final approval to the Settlement.

### E. There Was No Collusion Here

Where the record shows "an arms-length negotiation," there was no collusion. *Shaun Foley*, 2016 IL Ap (2d) 150236, ¶ 50; *see also Korshak*, 206 Ill. App. 3d at 973 (affirming trial court's finding of no collusion where case "was hard fought by both counsel . . . and . . . settlement reached after vigorously contested litigation and hard bargaining"). That is precisely what occurred here and settlement was reached after armed length negotiations. Fradin Decl. ¶¶ 6-8.

### F. The Stage of the Proceedings Warrants Final Approval

The issues in this litigation have crystalized sufficiently for the Parties to assess the strengths and weaknesses of their negotiating positions (based upon the litigation to date, the anticipated outcomes of fact and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolutions. *See Bayat v. Bank of the W.*, No. 13-cv-2376, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015) (concluding that sufficient discovery had been completed to evaluate the settlement even though parties reached an early settlement "because the issues in this case are straightforward and not particularly fact intensive"). This factor, then, like all the others strongly supports final approval of the Settlement.

### V. Conclusion

**Wherefore**, and for the reasons set forth above, Plaintiff requests that this Court grant final approval of the Parties' Settlement, approve attorneys' fees and costs in the amount of $30,000.00 and costs in the amount of $470.81 and approve a $7,500.00 service award to Plaintiff.

                                              Respectfully submitted,

**FRADIN LAW**

s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com


By: /s/ *James L. Simon*
James L. Simon (OH#0089483)
SIMON LAW CO.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 816-8696
Email: james@simonsayspay.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023 a true and complete copy of the forgoing was served upon all necessary parties through the Court's Electronic Filing system.

/s/ *Michael L. Fradin*